EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANDRÉS LÓPEZ, acusado y apelante.

Núm. 7342.—*Sometido:* Enero 24, 1939. *Resuelto:* Febrero 15, 1939.

*González Fagundo & González Jr.,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Andrés López Maldonado fué denunciado ante la Corte Municipal de Humacao por Eleuteria Rivera porque "siendo el padre de los menores de edad nombrados Felipe Rivera de 6 años de edad; Carmen Gloria y Víctor Rivera de ocho años de edad cada uno habidos viviendo con la denunciante;

de una manera ilegal, voluntaria y sin excusa legal alguna que lo justifique, ha dejado de cumplir con las obligaciones de padre que la ley le impone no proveyendo a dichos menores de edad del indispensable alimento, vestuario y asistencia médica a pesar de contar con dinero y recursos suficientes para dar cumplimiento a tales obligaciones de padre y de haber sido requerido para ello en varias ocasiones.''

Condenado por la corte municipal, apeló para ante la del distrito. Del acta del nuevo juicio celebrado ante el tribunal de apelación, transcribimos lo que sigue:

''El acusado da por leída la denuncia y formula una excepción perentoria alegando que la denuncia no aducía hechos constitutivos de delito y la Corte luego de oír a las partes, declara sin lugar la excepción perentoria. El acusado entonces hizo alegación de no culpable. Se procedió a la práctica de la prueba de cargo, y la defensa solicitó el archivo del proceso alegando que dentro de un caso criminal no se puede establecer una acción civil y además porque la denuncia no estaba jurada, y la Corte declara sin lugar la solicitud de la defensa. La defensa entonces presentó una certificación del matrimonio del acusado, quedando sometido el caso.

''La Corte, vista la denuncia, oída la contestación del acusado y la prueba practicada, de acuerdo con lo resuelto en el caso de *El Pueblo* v. *Rohena*, 52 D.P.R. 313 y 314, declara al acusado culpable del delito y lo condena a tres meses de cárcel y las costas; dejando en suspenso esta sentencia mientras el acusado le pase a la denunciante para sus hijos semanalmente la suma de dos dólares para cada uno de sus tres hijos.

''Y se ordena que el sentenciado, si no cumpliere con los términos de esta sentencia, sea conducido de esta Corte de Justicia para la Cárcel Común del Distrito a donde será entregado al Jefe de aquel establecimiento penal para que sea en el mismo recluído por el término señalado en esta sentencia.''

Recurrió López Maldonado para ante esta Corte Suprema. Señala en su alegato los siguientes errores:

''1º.—La Corte cometió error al declarar sin lugar la excepción perentoria presentada por el acusado alegando que la denuncia no aduce hechos constitutivos de delito.

"2º.—La Corte erró al declarar sin lugar la moción presentada por el acusado solicitando el archivo del proceso.

"3º.—La Corte erró al admitir prueba testifical para justificar que Felipe, Carmen Gloria y Víctor Rivera son hijos del acusado.

"4º.—La Corte erró por aplicación indebida de los artículos 128, 129 y 143 del Código Civil, edición de 1930, al determinar que dentro de un proceso criminal podía probarse una filiación en la forma que se ha tratado de probar en este caso.

"5º.—La Corte erró por infracción al artículo 250 del Código Civil, edición de 1930.

"6º.—La sentencia no está sostenida por la prueba."

Argumentando el primer señalamiento sostiene el apelante que la denuncia es insuficiente porque de su faz no aparece que los hijos sean legítimos, legitimados, naturales o ilegítimos reconocidos o adoptivos.

Conocemos lo alegado en la denuncia. La ley aplicable lo es el artículo 263 del Código Penal, ed. 1937. Dice:

"Todo padre o madre de un hijo legítimo, legitimado natural o ilegítimo reconocido y adoptivo que voluntariamente y sin excusa legal, dejare de cumplir cualesquiera de las obligaciones que la ley le impone, de proveerle del indispensable alimento, vestuario o asistencia médica, incurrirá en *misdemeanor; Disponiéndose, sin embargo,* que cuando se denuncie a una persona bajo las disposiciones de este artículo y fuere sentenciada, la corte podrá dejar en suspenso la ejecución de la sentencia bajo las condiciones que tenga a bien imponer para bienestar del niño."

A nuestro juicio no es de tal modo insuficiente la denuncia que deba concluirse que no surja de ella la comisión del delito que se imputa al acusado.

La ley penal tal como rigió hasta el 1931, comenzaba "Todo padre o madre de un niño . . ." y como fuera interpretada en el sentido de referirse a hijos legítimos solamente, (*El Pueblo* v. *Ferrán,* 26 D.P.R. 263, 264), el legislador la enmendó en su forma actual de modo que comprendiera toda clase de hijos. Se trata de un solo delito cuya esencia consiste como argumenta el fiscal en su alegato en el abandono voluntario y sin excusa de los hijos, sean éstos de la clase

que fueren y por lo tanto si la denuncia habla de hijos expone el hecho fundamental necesario, dejando al juicio, al probar tal hecho, el esclarecimiento de su condición. Si el acusado deseaba ser informado más detalladamente pudo solicitar mayor especificación. No hubo error.

██ Los otros errores señalados pueden y deben estudiarse conjuntamente. Repetidamente insiste el apelante en que tratándose como se trata en este caso de hijos ilegítimos, sólo pudo condenarse al acusado si se hubiera demostrado la existencia de una sentencia firme dictada en proceso criminal o civil de la cual se infiriera su paternidad o la de un documento indubitado en el cual hubiera reconocido expresamente la filiación, todo, según él, conforme lo exigen los artículos 128, 129 y 143 del Código Civil, ed. 1930. Sostiene que su "contención es que la paternidad o maternidad del hijo ilegítimo debe ser un hecho anterior o preexistente a la reclamación de alimentos."

No estamos conformes. Creemos que la corte de distrito no cometió error alguno al admitir la declaración de Eleuteria Rivera, madre de los menores, sobre el hecho de haber vivido en concubinato con el acusado que era un hombre casado y el de haber nacido como resultado de esa unión los menores hijos de que se trata, a quienes sostuvo como tales por algún tiempo y luego abandonó, ni al permitir a los testigos de El Pueblo Simón Tolentino y Ángel Vigoró que declararan también sobre esos hechos, y que tampoco erró al basar en esos tres testimonios su sentencia condenanlo al acusado por haber dejado de proveer voluntariamente y sin excusa legal de alimento a sus hijos ilegítimos menores de edad Felipe, Carmen Gloria y Víctor Rivera, de acuerdo con el artículo 263 del Código Penal.

Recientemente esta corte en el caso del *Pueblo* v. *Rohena,* 52 D.P.R. 313, resolvió que:

"'El hecho de la paternidad, o sea la relación de padre e hijo que pueda existir entre el acusado y el menor de quien se trate, puede ser establecido dentro del proceso por abandono de menores.''

Y desde hace años en el caso de *El Pueblo* v. *González,.* 26 D.P.R. 424, 425, por medio de su Juez Asociado Sr. Wolf, después de transcribir el artículo 132 del Código Civil, se expresó así:

"Este artículo tal como está redactado no incluirá el caso de un hijo natural reconocido a menos que la palabra 'descendientes' incluyera tal caso, y nadie en este país dudaría que un hombre no puede contraer matrimonio con su hija natural reconocida, y por tanto que sería culpable de incesto de tener concúbito con ella.

"La corte inferior basó en parte su decisión en el fundamento de que la relación filial en un caso de esta naturaleza debe quedar demostrada fuera de toda discusión, y que como la acusación alegaba que la hija no había sido reconocida no existía por tanto relación legal entre las partes. En otras palabras, que la ley exige en esta clase de casos que exista alguna relación legal. Esta teoría de la corte está fundada en la regla que generalmente prevalece de que la paternidad de un niño no puede ser investigada. Entendemos que esta regla quiere decir que no se puede acudir a las cortes para establecer una relación civil entre padre e hijo, probablemente para proteger los derechos de propiedad y por razón de los grandes inconvenientes que se causarían a la sociedad si los pleitos de esta clase pudieran ser incoados indistintamente. Fundamentalmente es más bien una regla de propiedad que otra cosa. Pero la sanción del derecho penal es muy diferente y este artículo del Código va encaminado a impedir el concúbito entre dos personas que se hallen dentro de los grados de consanguinidad en que el matrimonio está prohibido. No teniendo duda de que un matrimonio entre estas dos personas podría ser declarado ilegal, tampoco la tenemos de que la acusación establece un delito. Los siguientes son casos de los Estados Unidos que sostienen la conclusión a que hemos llegado: *People* v. *Lake*, 110 N. Y. 61; *Cecil* v. *Commonwealth*, 131 S. W. 782; *Clark* v. *State*, 45 S. W. 576; *Wadkins* v. *State*, 124 S. W. 959; *Lipham* v. *State*, 53 S. E. 817; 14 R.C.L. 33.

"No desconocemos las decisiones de esta corte en materias civiles declarativas de que la palabra 'hijos' generalmente significa *hijos legítimos,* pero aquí se trata del concúbito habido entre dos personas que no tienen derecho a contraer matrimonio. No podemos convenir con el apelado en que si llegase a casarse con su ilegítima hija su matrimonio sería válido o de algún modo favorecido por nuestras leyes.

"Puede ser que las cortes estén en el deber de examinar la prueba en causas de esta índole con gran cuidado, puesto que quizás podría intentarse la comisión de fraudes o chantages. Ninguna persona debe ser convicta bajo una imputación de esta clase a menos que las manifestaciones de la supuesta madre queden bien corroboradas. Hemos dicho frecuentemente que en casos de filiación la prueba debe ser vigorosa, y la prueba en casos de esta índole debe ser más vigorosa aún. Esto equivale a decir que un acusado tiene derecho a que se den al jurado instrucciones cuidadosas en cuanto a la duda razonable."

Es a lo más que puede llegarse en casos de esta naturaleza, esto es, a tomar muy en cuenta las recomendaciones que contiene el último párrafo de la opinión transcrita, pero no a poner un valladar en la mayor parte de los casos infranqueable a la debida administración de la justicia que exige que los padres no abandonen a sus hijos aun cuando los procreen faltando a los deberes que un matrimonio debidamente constituído les imponga y a virtud de actos constitutivos de delito. Si otra interpretación se adoptara se desnaturalizaría el propósito de la ley y en cierto modo se premiaría a un delincuente por el hecho de serlo.

Se insiste en que el estatuto penal habla de hijos ilegítimos reconocidos y en que el artículo 129 del Código Civil expresamente prescribe que el derecho a alimentos de los hijos ilegítimos en quienes no concurra la condición legal de naturales, sólo podrá ejercitarse si la paternidad o maternidad se infiere de una sentencia firme dictada en un proceso criminal o civil o si resulta de un documento indubitado del padre o de la madre, en que expresamente reconozca la filiación.

Los hijos ilegítimos se dividen en dos clases, a saber: hijos nacidos fuera del matrimonio pero de padres que al tiempo de su concepción hubieran podido casarse, e hijos nacidos fuera del matrimonio de padres que al tiempo de su concepción no hubieran podido contraerlo. Los primeros se llaman naturales y es para ellos que la ley establece la acción de reconocimiento. Artículos 125, 126 y 127 del Código Civil,

ed. 1930. Para los segundos no hay tal acción. Sólo les reconoce la ley civil—artículo 128 del Código—el derecho a ser alimentados por sus padres de acuerdo con lo dispuesto en el artículo 143.

No hay duda de que la palabra reconocidos usada por el legislador en relación con el hijo ilegítimo en la ley penal —artículo 263 del Código Penal, ed. 1937—lo fué por inadvertencia. Pero partiendo de la base de su existencia entendemos que significa que sólo se comete el delito cuando lo es por un padre que pudiendo deja de alimentar a hijos ilegítimos que ha tenido pública o privadamente como tales o que por ser sus hijos en realidad de verdad se hubiera visto obligado a reconocer si concurriera en ellos la condición de naturales, y dando a lo prescrito en el Código Civil—artículo 129—una interpretación razonable, en armonía con la enmienda legislativa de la ley penal de 1931 (Ley núm. 36 de 1931, pág. 353), entendemos que la sentencia dictada en un proceso criminal a que se refiere puede ser la que se dicte dentro del proceso criminal que por abandono del hijo ilegítimo se siga como se siguió en este caso.

Si se demuestra en él fuera de duda razonable que el padre sabía que el menor era su hijo o que lo había tenido como tal y por consiguiente como tal debía reconocerlo o lo había reconocido y que eso no obstante voluntariamente y sin excusa legal había dejado de cumplir las obligaciones que la ley le impone de proveerle del indispensable alimento, vestuario o asistencia médica, debe ser condenado aunque no se presente el documento a que se refiere el párrafo segundo o la sentencia dictada en pleito civil de que habla el párrafo primero del artículo 129 del Código Civil tantas veces citado.

Dentro del estado actual de nuestro derecho, la sentencia dictada en proceso criminal a que se refiere el repetido artículo no puede ser otra que la que se dicte en la causa criminal por abandono donde todos los hechos esenciales pueden quedar debidamente establecidos. La obligación del padre surge del hecho substancial de serlo. Probado en

debida forma que lo es y que siéndolo dejó de cumplir su obligación en la manera que la ley penal establece, el delito debe entenderse cometido.

Y eso fué lo que sucedió en este caso. Examinada la evidencia es a nuestro juicio terminante. Demuestra que el acusado no obstante ser casado indujo a Eleuteria Rivera a vivir con él en concubinato naciendo como resultado de esas relaciones los tres menores que sostuvo por algún tiempo y que luego abandonó debiendo y pudiendo sostenerlos.

Véanse los siguientes casos en los cuales se resolvió que no obstante existir como existe un procedimiento especial para la declaratoria de herederos, cuando un heredero ejercita alguna acción como tal sin haber antes recurrido a dicho procedimiento, puede dentro del pleito y a los efectos del mismo acreditar su condición mediante prueba apropiada: *Morales et al.* v. *Landráu et al.,* 15 D.P.R. 782, *Soriano et al.* v. *Rexach et al.,* 23 D.P.R. 573, *Fortis* v. *Fortis,* 25 D.P.R. 69, 76, *Sucn. Rodríguez* v. *Pérez,* 25 D.P.R 78, 82, *Casanovas & Co.* v. *Ramírez et al.,* 25 D.P.R. 625, 627, *Méndez* v. *Martínez,* 26 D.P.R. 96, 100, *Sucesión Torres Negrón* v. *Torres et al.,* 29 D.P.R. 909, *Ginorio* v. *Registrador,* 50 D.P.R. 400, 401.

*Por virtud de todo lo expuesto debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Wolf disintió. *